IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BAIKUNTHA KHANAL, ET AL.,

    Plaintiffs,

v.

SAN FRANCISCO HILTON,

    Defendant.

No. C 14-01523 JSW

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS**

Now before the Court is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant San Francisco Hilton ("Defendant") and the motion to remand filed by Plaintiffs. The Court has considered the parties' papers and relevant legal authority, and HEREBY DENIES Plaintiffs' motion to remand and GRANTS Defendant's motion to dismiss.

**BACKGROUND**

Plaintiffs are food and beverage service employees employed by Defendant at the San Francisco Hilton hotel located at 333 O'Farrell Street in San Francisco, California. (First Amended Complaint ("FAC") ¶ 12.) Plaintiffs seek to pursue a class action challenging Defendant's failure to remit the total proceeds of gratuities that have been added to bills for food and beverage to food and beverage service employees. (*Id.*, ¶¶ 1, 8.) Plaintiffs contend that Defendant has a policy and practice of retaining for itself a portion of these gratuities to give to managers and other non-service employees who do not serve food and beverages. (*Id.*, ¶¶ 9, 10.)

1 Plaintiffs are members of a union and the wages, hours, and working conditions of
2 Plaintiffs' employment with Defendant are governed by a collective bargaining agreement
3 ("CBA"). (Original Complaint ¶ 3.) Section 9 of the CBA, titled "Banquet Service
4 Charge/Gratuities," sets forth the agreed upon payment, calculation, and distribution of
5 gratuities for banquets ("any sit-down function which has been defined and paid at the banquet
6 rate according to the custom and usage of the trade"), buffets, and receptions. (*See* Defendant's
7 Notice of Removal, Ex. B, Dining Room Department, Section 9.)

8 On January 6, 2013, Plaintiffs filed their original complaint before the Superior Court of
9 the State of California in the County of San Francisco. Defendant removed the action to this
10 Court on April 2, 2014, on the basis of federal question jurisdiction under 28 U.S.C. Section
11 1331. On April 28, 2014, Plaintiffs filed a first amended complaint which contains a single
12 cause of action for violation of California Labor Code Section 351, enforceable pursuant to
13 California Business and Professions Code Section 17200.

14 On May 23, 2014, Defendant filed a motion to dismiss on the basis that the action is
15 preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.
16 Section 185 ("Section 301"). Defendant contends that the action is preempted because
17 resolution of Plaintiffs' claim requires the Court to interpret one or more of the provisions of the
18 parties' CBA.

19 On January 9, 2014, Plaintiffs filed a motion to remand this case to the California
20 Superior Court pursuant to 28 U.S.C. Section 1367(c). Plaintiffs contend that their claim is not
21 preempted by Section 301 because it relies entirely on California statutory law. Accordingly,
22 Plaintiffs assert that this Court should exercise its discretion pursuant to Section 1367 to remand
23 the case to state court.

24 The Court will address additional facts as necessary in the remainder of this Order.
25 //
26 //
27 //
28 //

# ANALYSIS

## A. Applicable Legal Standards.

### 1. Motion to Remand.

"[A]ny civil action brought in State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally filled in state court may be removed to federal court only if the district court could have exercised jurisdiction over such action if initially filed there. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A district court must remand the case if it appears before final judgment that the court lack subject matter jurisdiction. 28 U.S.C. § 1447(c). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Moreover, a court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 392. The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Thus, under the well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint establishes either that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28.

3

1   While a defense of preemption, also known as "ordinary preemption," is insufficient to
2   demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-
3   pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80
4   F.3d 339, 344 (9th Cir. 1996). Under the complete preemption doctrine, the force of certain
5   federal statutes is considered so "extraordinary" that it "converts an ordinary state common law
6   complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."
7   *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Rains*, 80 F.3d at 344.

### 2. Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)

4

(citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds, Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

**B.   Plaintiffs' Claim is Substantially Dependent Upon an Analysis of the Terms of the Collective Bargaining Agreement, and Therefore, is Completely Preempted by Section 301 of the LMRA.**

Defendant argues that Plaintiffs' single cause of action for violation of California Labor Code Section 351 is preempted under Section 301 of the LMRA. Although Plaintiffs do not mention the CBA in their amended complaint, Defendant argues that Plaintiffs' single cause of action is nevertheless substantially dependent upon an analysis of the terms of the CBA, and therefore, is completely preempted under Section 301. In opposition, Plaintiffs argue that their single cause of action relies entirely on California statutory law, and that even if it is necessary for the Court to consult the CBA, merely looking to the CBA is not enough to establish preemption under Section 301. As such, Plaintiffs argue that remand is proper for their single statutory claim under California law.

Under the doctrine of complete preemption, the preemptive force of certain federal statutes is so extraordinary that they can convert ordinary, state common-law complaints into one stating a federal claim. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). Plaintiffs' claim is completely preempted only if its resolution is substantially dependent upon an analysis of the CBA between Plaintiffs' union and Defendant. *See id.* at 394 ("Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'") (internal citations omitted). If Plaintiffs' claim is independent from any analysis of the CBA then the claim is not preempted and remand would be proper. *See id.*

Ordinarily, under the well-pleaded complaint rule, a plaintiff may avoid federal jurisdiction by pleading exclusively state law claims. *See id.* at 392. The existence of federal

5

jurisdiction usually is determined by looking to the face of the plaintiff's complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). The doctrine of complete preemption, however, is an exception to the well-pleaded complaint rule in that it converts an ordinary state common-law complaint into one stating a federal claim if the state law claims invoke a federal statute with an extraordinarily strong preemptive force. *See Metropolitan Life*, 481 U.S. at 65. Section 301 of the LMRA is a federal statute with such complete preemptive force. 29 U.S.C. § 185; *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559-60 (1968).[1]

The Supreme Court has held that Section 301 of the LMRA authorizes federal courts to develop a federal common law of CBA interpretation. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957). This federal common law preempts the use of state contract law in CBA interpretation and enforcement. *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). To determine whether state law claims are preempted, "it is the legal character of a claim as 'independent' of rights under the collective bargaining agreement, that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (internal citations omitted). State law claims are independent only if the court need not interpret or construe a provision of the CBA. *See Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988).

The *Burnside* court set forth a two-step inquiry to determine whether Section 301 preempts a state law claim. *See Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, courts must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, [and] not by a CBA." *Id.* When the answer to this question results in the negative, Section 301 preemption applies. *Id.* To answer this question, the Supreme Court instructs courts to consider "the legal character of a claim, as 'independent' of rights under the [CBA and] not whether a grievance arising from 'precisely the

---

[1] Section 301 is a jurisdictional statute which states, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

6

1  same set of facts' could be pursued." *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123
2  (1994) (internal citations omitted). Merely asserting reliance on the CBA in a defensive
3  argument is not enough to "inject[ ] a federal question into an action that asserts what is plainly
4  a state-law claim." *See Caterpillar*, 482 U.S. at 398-99 (holding that "the plaintiff is the master
5  of the complaint," and that if the defendant could transform what is plainly a state-law claim
6  into one arising under federal law by merely injecting a federal question in his defense, "the
7  plaintiff would be master of nothing").

8  When the asserted cause of action involves a right conferred upon an employee by virtue
9  of state law, the Court proceeds to the second part of the inquiry – whether the claim is
10 nevertheless "substantially dependent on analysis of a [CBA]." *Burnside*, 491 F.3d at 1059.
11 (citing *Caterpillar,* 482 U.S. at 394 (quoting *Int'l Bhd. of Electric Workers v. Hechler*, 481 U.S.
12 851, 859 n.3 (1987)). In order to determine whether a state law right is "substantially
13 dependent" on the terms of a CBA, the Supreme Court instructs this Court to decide whether the
14 claim can be resolved by "look[ing] to" versus interpreting the CBA. *Id.* at 1060 (citing
15 *Caterpillar*, 482 U.S. at 394; *Lividas*, 512 U.S. at 125; *Cramer v. Consolidated Freightways,*
16 *Inc.*, 255 F.3d 683, 691 (9th Cir. 2001)). Although the distinction between "looking to" and
17 "interpreting" is not "not always clear or amenable to a bright line test," neither "'look[ing]' to
18 the CBA merely to discern that none of its terms is reasonably in dispute," nor "the simple need
19 to refer to bargained-for wage rates in computing [a] penalty," is enough to warrant preemption.
20 *See Cramer*, 255 F.3d at 691, 692.

21 With these interpretive principles in place, the Court turns its attention to Plaintiffs'
22 claim against Defendant. Plaintiffs allege that Defendant "imposed gratuities on the sale of
23 food and beverages at its hotel from 'banquets, events, buffets, coffee service, and room
24 service,' but has failed to distribute the total proceeds of said gratuities to the service employees
25 as required by California Labor Code Section 351." (FAC ¶¶ 1, 7.) Plaintiffs contend that
26 Defendant retained some of the total proceeds for itself or distributed it to "other non-service
27 employees who do not serve food and beverages." (FAC ¶ 10.) Defendant does not appear to
28 address whether Plaintiffs' asserted cause of action involves a right conferred upon the

1   employees by virtue of state law.  Instead, Defendant argues that, in order to determine whether
2   Defendant wrongfully withheld gratuities from service employees, the Court will be required to
3   interpret the terms of the CBA.  The Court is persuaded by Defendant's argument.  Without
4   interpreting the terms of the CBA, the Court would be unable to determine whether Plaintiffs
5   were paid the contractually-agreed upon amount in gratuities per the CBA or whether
6   Defendant has a policy and practice of retaining for itself a portion of these gratuities.

   Plaintiffs do not mention the CBA in their amended complaint, but it was attached to
   their original complaint.  Regardless, as Defendant correctly points out, the Court will be
   required to use the CBA to determine whether Plaintiffs were paid the appropriate share of
   gratuities because Section 9 of the CBA, titled "Banquet Service Charge/Gratuities," sets forth
   the agreed upon payment, calculation, and distribution of gratuities.  (*See* Defendant's Notice of
   Removal, Ex. B, Dining Room Department, Section 9.)  Specifically, Section 9 of the CBA
   provides, in relevant part:

> (a) Banquets.  In arranging all banquets (a banquet shall be deemed to be any sit-down function which has been defined and paid at the banquet rate according to the custom and usage of the trade) the Employer guarantees seventy percent (75%) of the following percentage of the total food and/or beverage charge, except for receptions, buffets and cocktail parties.
>
> 18.5% Effective on ratification (unless the event has already been booked at a lower rate as of the ratification)
>
> or best practices if it is higher and the hotel must go to the those rates if it is not there now.
>
> The above shall be distributed as follows:
>
> 75% to food servers and bus persons serving the banquet; the Employer shall be responsible for and shall gurantee the distribution of said seventy-five percept (75%);
>
> 25% to head waiters, head waitresses, captains, maitre's d' and others.
>
> (b) Each banquet check given to the engager for signature shall provide a place indicating the total amount of the service charge and for verification thereof by the engager or guest authorized to sign the check.  Each banquet check shall so specify the total amount of the service charge.

8

>   (c) Buffets and Receptions. Seventy-five percent (75%) of the total gratuity received and shown on the check as required in (b) above, regardless of how it is specified by guest or engager, shall be distributed to food servers, bus persons working the buffet or reception and the remaining twenty-five percent (25%) shall be distributed to head waiver, head waitresses, captain, maitre d' and others. The Employer shall be responsible for and shall guarantee the distribution of all buffet and reception gratuities in accordance with this rule.

*Id.*

Because Plaintiffs' single cause of action alleges that Defendant failed to distribute the total amount of gratuities on the sale of food and beverages at its hotel from "banquets, events, buffets, coffee service, and room service," the Court must interpret and apply Section 9 of the CBA. In order to determine whether Plaintiffs and "non-service employees who do not serve food and beverages" were paid the appropriate amount obtained from food and beverage service during any banquets, events, and buffets, the Court must interpret Subsections (a) and (c) of Section 9 of the CBA. The Court must also interpret the CBA in order to determine whether Plaintiffs were properly paid service charges/gratuities for other types of food and beverage services such as coffee and room service. Accordingly, the Court needs to interpret the CBA to determine whether coffee and room service is more like a "banquet" under Section 9(a) of the CBA, or a "buffet/reception" under Section 9(c), or neither.

In opposition, Plaintiffs rely on a number of cases demonstrating that Section 301 preemption does not apply where wait staff working under a CBA allege that their employer's practices with respect to withholding or distributing gratuities violate a state's wage laws. *See Wadsworth v. KSL Grand Wailea Resort, Inc.*, 818 F. Supp. 2d 1240, 1252 (D. Haw. 2010); *Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc.*, 2010 WL 8938524, at *1 (D. Haw. Dec. 29, 2010); *Kyne v. Ritz-Carlton Hotel Co.*, LLC, 835 F. Supp. 2d 914, 929 (D. Haw. 2011); *Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 469 (S.D. N.Y. 2010); *Hernandez v. Harvard University*, 2013 WL 1330842, at *4 (D. Mass. Mar. 28, 2013). However, Plaintiffs fail to cite any California cases or cases interpreting California contract law to support this theory.

9

Furthermore, Plaintiffs assert that the CBA is entirely irrelevant to their claim because the amended complaint does not invoke or rely upon CBA. However, the fact that CBA is not referenced in the amended complaint does not mean that Plaintiffs' claim cannot be preempted by Section 301. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), *overruled on other grounds by Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (holding that the artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts necessary for the court to determine the true nature of the complaint). While Plaintiffs suggest otherwise, the absence of any mention of the CBA in the amended complaint, when its claim clearly requires the interpretation of Section 9 of the CBA, merely illustrates Plaintiffs' conscious attempt artfully to plead around it. *See Burnside*, 491 F.3d at 1059 (holding that Section 301 preemption cannot be avoided by artfully pleading breach of CBA claims as tortious breach of contract or other state law claims). Artful pleading does not circumvent the effect of federal preemption, especially when the statute's preemptive effect "is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23.

Accordingly, the Court finds Section 301 completely preempts Plaintiffs' claim and therefore DENIES Plaintiffs' motion to remand.

**C.    Plaintiffs Fail to Allege Facts that Would Allow the Court to Determine Whether Plaintiffs Exhausted Grievance Procedures.**

In their motion to dismiss, Defendant contends that the Court lacks jurisdiction over this matter because Plaintiffs failed to exhaust their remedies as set forth in the CBA. The CBA governs this dispute and provides for the exclusive resolution of any contractual interpretation issues via grievance and arbitration procedures. (*See* Defendant's Notice of Removal, Ex. B, Section 12.) Defendant asserts that this Court lacks jurisdiction and the claim should therefore be dismissed because Plaintiffs failed to exhaust their contractually-agreed upon remedies. Plaintiffs argue that the CBA's grievance and arbitration procedures are not applicable here because Plaintiffs have raised a statutory claim that is independent from any obligations created

10

under the CBA. However, for the reasons stated above, the Court finds that Plaintiffs have not raised a statutory claim independent from any obligations created under the CBA.

Ordinarily, CBAs contain grievance and arbitration provisions which are intended to provide the exclusive remedy for breach of contract claims against an employer. *See Lingle*, 486 U.S. at 411 n.11 ("Arbitrators are delegated by nearly all collective bargaining agreements as the adjudicators of contract disputes . . . . Arbitration is called for in 99 percent of the sample contracts."); *see also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-54 (1965). "[I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established" by the CBA before bringing suit in court. *See Vaca v. Sipes*, 386 U.S. 171, 184 (1967). The Supreme Court has recognized, however, that this rule works an "unacceptable injustice [on the employee] when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983). Thus, an employee may bring suit where the employee can establish either: (1) that the union has sole authority to invoke the higher stages of the grievance procedure, and that the union has wrongfully refused to process the employee's grievance; or (2) that compliance with a grievance or arbitration procedure would be futile due to the union's breach of the duty of fair representation. *See Vaca*, 386 U.S. at 185; *DelCostello*, 462 U.S. at 164.

In this case, Plaintiffs only allege that the CBA requires complaining parties to submit to grievance and arbitration procedures when raising disputes regarding the interpretation and/or application of the specific terms of the CBA. (Opp. Br. at 17.) Plaintiffs, however, have not alleged sufficient facts to establish that exhaustion of the grievance procedures would be futile. In the absence of any facts alleging either that Plaintiffs exhausted the grievance procedure, or that exhaustion would be futile, Plaintiffs' claim against Defendant must be dismissed for failure to exhaust such measures. *See, e.g., Carr v. Pac. Maritime Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990).

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' claim with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion to remand and GRANTS Defendant's motion to dismiss. In accordance with Federal Rule of Civil Procedure 15(a) which states that leave to amend "shall be freely given when justice so requires," the Court dismisses Plaintiffs' complaint with leave to amend. Plaintiffs may file an amended complaint within 30 days of this order.

**IT IS SO ORDERED.**

Dated: March 9, 2015



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

12